When Peter N. Holm, of Tacoma, died he left a very small estate consisting, for the most part, of a small stock of groceries located in a small wooden rented building. So far as known at that time, he did not leave any heirs. The respondent, R.H. Lund, was appointed special administrator. He hired some person who was versed in the grocery business to take an inventory of the property and to make an estimate of its value. He then petitioned the court for authority to sell the stock of groceries and fixtures. The reasons shown for the sale were that a small portion of the stock was perishable, that it was all located in a small, insecure wooden building, that there was great danger of fire and theft, and there was no certainty that the goods would be permitted to remain in the building, the leasehold interest only running from month to month.
Upon this showing, the court made an order directing that the property be sold at private sale, upon notice being given in the manner directed. Thereafter two bids were received, one for five hundred fifty dollars, the property to be clear of any liens and encumbrances, the other for a much smaller sum. The special administrator reported the bids to the court, who, after taking testimony, ordered that the five hundred fifty dollars bid be accepted, and the administrator was directed to pay and discharge a lien of taxes in the sum of about fifty dollars and the balance due on a chattel mortgage on the property in the sum of a little less than one hundred dollars, and then to convey the property to the successful bidder upon the payment of the purchase price. Shortly before this, the court suggested that the special administrator see that the body of the deceased be buried, at an expense of not to exceed two hundred fifty dollars. *Page 477 
Shortly after the sale was made, Joseph Gratzer, the appellant, was appointed general administrator and he qualified. Thereupon the special administrator reported all of his transactions to the court. He showed that he had sold the property, receiving therefor the sum of five hundred fifty dollars, and that, in addition to that sum, about one hundred five dollars had come into his hands, being cash belonging to the estate, thereby charging himself with a total of $655.25. He further reported that he had paid a small amount to the clerk of the court for fees, fifteen dollars for making an inventory of the property, $50.51 personal property taxes, ten dollars premium on his official bond, a small sum for water and light, $89.87 balance due on a chattel mortgage covering the stock of groceries, a small sum for posting notices of sale, and two hundred fifty dollars funeral expenses. He asked for fifty dollars compensation and to be permitted to turn over the balance in his hands to the general administrator.
The latter appeared and objected to everything that the special administrator had done — objected to the sale on the ground that there was no necessity or authority for making it; objected to the allowance of any credit on account of any sums paid, for the reason that they were unlawfully paid. Notwithstanding these objections, the court, after a hearing, approved the sale and all of the payments made, and the general administrator has appealed.
[1] Rem. Comp. Stat., § 1451, [P.C. § 9999] provides for the appointment of a temporary or special administrator "to collect and preserve the effects of the deceased." The next section provides for his bond, and the next authorizes the special administrator to "collect all the goods, chattels, and debts of the deceased, and preserve the same for the executor or administrator *Page 478 
who shall thereafter be appointed," and "also sell such perishable and other goods as the court shall order sold," and shall be entitled to such compensation as the court shall deem reasonable. The next section provides that, when the general administrator is appointed, the special administrator shall forthwith deliver to him all the property and effects that have come into his hands. The next section provides that the special administrator shall not be liable to any action by any creditor. Under these provisions of the statute the powers of the special administrator are quite limited. He is authorized to do little other than collect and preserve the effects of the deceased.
Under the facts shown, we are satisfied that the special administrator had a right to sell the property in question for its preservation, because the statute authorizes the sale of "perishable and other goods" as the court shall order. While the statute certainly contemplates that a sale can be had only for the purpose of conserving and protecting the assets, we think the showing in this case was sufficient to indicate that a sale for that reason was advisable.
[2] It is contended, however, that the sale should be set aside because of the small amount for which the property was sold. This contention is based largely on the fact that the inventory which the special administrator had made indicated that the value of the property was some twelve or thirteen hundred dollars. But before the court directed the special administrator to accept the bid of five hundred fifty dollars, he heard considerable testimony concerning the property and its value and determined, and we think correctly, that the bid of five hundred fifty dollars was not greatly disproportionate to the actual value of the property as located. *Page 479 
 [3] The next question is whether the special administrator had power under the statute to make the payments we have indicated. That the payments made for clerk's fees, inventory, light, water, premium on bond, for the posting of notices of sale and for a pad-lock for the front door of the store were properly made, we think there can be no doubt. Those bills were incurred either as a part of the administration expenses or for the protection of the property. We are also of the opinion that the special administrator was authorized to pay the personal property tax in the sum of $50.51 and the balance of a little less than one hundred dollars due on a chattel mortgage covering the property sold, because such payments were in connection with the sale, and therefore the preservation, of the property. The best bid that had been made was on condition that the purchaser should receive the property free of liens. In order to obtain the benefit of this bid, the taxes and the balance due on the mortgage had to be paid so as to release the liens thereof.
[4] A rather more serious question arises concerning the payment of the funeral expenses in the sum of two hundred fifty dollars. It can hardly be said that this payment was in any sense for the purpose of the preservation or protection of the assets of the estate. However, the payment was made by the special administrator, and after a hearing the court finds that the amount paid was reasonable and its payment was approved. Technically speaking, the special administrator had no right to pay this bill. Under the statute and the authorities a special administrator has no right to give notice to creditors, or to allow or reject claims (Ward v. Magaha, 71 Wn. 679,129 P. 395), or to pay them. These powers rest solely with the general administrator. But the bill having been paid by the *Page 480 
special administrator and approved by the court, he as an individual would have a claim against the estate for the amount he has paid, so that if we should require him to pay this two hundred fifty dollars to the general administrator, he would then have a right to file a claim with the general administrator for the identical sum. Funeral expenses is a first preferred claim (Rem. Comp. Stat., § 1541 [P.C. § 9803]). It seems to us that nothing worth while would be accomplished by requiring this procedure. We are unable to find in the testimony or elsewhere that the general administrator claims that the amount paid was excessive, or that he desires the right to reject the bill or to reduce it. If he did, then probably we would be required to hold that the special administrator must pay this sum to the general administrator. The objection is that the special administrator had no power to make the payment. Under the facts and circumstances of this case, we cannot see any good to be accomplished by making such requirement.
We do not want to be understood as holding that under the statute the special administrator had either the power or authority to pay this bill for funeral expenses. We simply hold that no good to the estate could be accomplished under the facts of this case by disallowing that payment and requiring him to pay the money to the general administrator.
The judgment is affirmed.
TOLMAN, C.J., MACKINTOSH, ASKREN, and PARKER, JJ., concur. *Page 481